4 U.S. 392
 4 Dall. 392
 1 L.Ed. 879
 Huidekoper's Lessee
v.
Douglass.
 Circuit Court, Pennsylvania District.
 April Term, 1805
 
 1
 THIS was an ejectment brought for a tract of land, lying north and west of the rivers Ohio and Alleghany, and Conewango creek. The lessor of the plaintiff made title under the Holland company, to whom a patent was issued, upon a warrant and survey. The defendant claimed as an actual settler, under the act of the 3d of April 1792. A great many ejectments were depending upon the same facts and principles;[1] and on the trial, of another ejectment, at a former term, WASHINGTON, Justice, had delivered a charge to the jury, coinciding, generally, with the construction given by the Supreme Court of Pennsylvania, to the act of April 1792, from which Judge PETERS dissented. It was, therefore, upon the recommendation of the Court, determined to submit the questions, upon which the opinions of the Judges were opposed, to the Supreme Court of the United States, under the provision made, in case of such a disagreement, by the act of the 29th of April 1802. 6 vol. 89. s. 6. The questions were, accordingly, stated, at the last October term, in the following form:
 
 
 2
 '1st. Whether under the act of the legislature of Pennsylvania passed on the 3d day of April 1792, entitled 'an act for the sale of the vacant lands within this commonwealth:' the grantee by warrant of a tract of land lying 'north and west of the rivers Ohio and Alleghany, and Conewango week,' who, by force of arms of the enemies of the United States, was prevented from settling and improving the said land, and from residing thereon, from the 10th day of April 1793, the date of the said warrant, until the 1st day of January 1796, but who, during the said period, persisted in his endeavours to make such settlement and residence, is excused from making such actual settlement, as the enacting clause of the 9th section of the said law prescribes, to vest a title in the said grantee.
 
 
 3
 '2d. Whether a warrant for a tract of land, lying north and west of the rivers Ohio and Alleghany, and Conewango creek, granted in the year 1793, under, and by virtue of the act of the legislature of Pennsylvania, entitled 'An Act for the sale of vacant lands, within this commonwealth,' to a person, who by force of arms of the enemies of the United States, was prevented from settling and improving the said land, and from residing thereon, from the date of the said warrant, until the first day of January 1796, but who, during the said period, persisted in his endeavours to make such settlement and residence, vests any, and if any, what title in or to the said land, unless the said grantee shall after the said prevention ceases, commence, and within the space of two years thereafter clear, fence and cultivate, at least two acres contained in his said survey, erect thereon a messuage for the habitation of man, and reside or cause a family to reside thereon, for the space of five years next following his first settling the same, the said grantee being yet in full life.
 
 
 4
 '3d. Whether a grantee in such warrant as aforesaid, who has failed to make such settlement as the enacting clause of the said ninth section requires, and who is not within the benefit of the proviso, has thereby forfeited his right and title to the said land, until the commonwealth has taken advantage of the said forfeiture, so as to prevent the said grantee from recovering the possession of said land in ejectment, against a person who, at any time after two years from the time the prevention ceased, or at any subsequent period, has settled and improved the said land and has ever since been in possession of the same.'
 
 
 5
 The questions were argued in the Supreme Court, at February term 1805, by E. Tilghman, Ingersoll, Lewis and Dallas, for the plaintiff; and by M'Kean (attorney general of Pennsylvania) and W. Tilghman, for the defendant.
 
 
 6
 The opinion of the Court was delivered by the Chief Justice, in the following manner.
 
 
 7
 MARSHALL, Chief Justice.
 
 
 8
 The questions which occurred in this case, in the Circuit Court of Pennsylvania, and on which the opinion of this court is required, grow out of the act passed by the legislature of that state, entitled 'An Act for the sale of the vacant lands within this commonwealth.'
 
 
 9
 The ninth section of that act, on which the case principally depends, is in these words: 'And be it further enacted by the authority aforesaid, that no warrant or survey, to be issued or made in pursuance of this act, for lands lying north and west of the rivers Ohio and Alleghany and Conewango creek, shall vest any title in or to the lands therein mentioned, unless the grantee has, prior to the date of such warrant, made, or caused to be made, or shall, within the space of two years next after the date of the same, make, or cause to be made, an actual settlement thereon, by clearing, fencing and cultivating at least two acres for every hundred acres contained in one survey, erecting thereon a messuage for the habitation of man, and residing, or causing a family to reside thereon, for the space of five years next following his first settling the same, if he or she shall so long live; and that in default of such actual settlement and residence, it shall and may be lawful to and for this commonwealth to issue new warrants to other actual settlers for the said lands, or any part thereof, reciting the original warrants, and that actual settlements and residence have not been made in pursuance thereof, and so as often as defaults shall be made, for the time and in the manner aforesaid, which new grants shall be under and subject to all and every the regulations contained in this act. Provided always, nevertheless, that if any such actual settler, or any grantee in any such original or succeeding warrant, shall by force of arms of the enemies of the United States, be prevented from making such actual settlement, or be driven therefrom, and shall persist in his endeavours to make such actual settlement as aforesaid, then, in either case, he and his heirs shall be entitled to have and to hold the said lands, in the same manner as if the actual settlement had been made and continued.'
 
 
 10
 The questions to be considered, relate particularly to the proviso of this section; but, to construe that correctly, it will be necessary to understand the enacting clause, which states what is to be performed by the purchaser of a warrant, before the title to the lands described therein, shall vest in him.
 
 
 11
 Two classes of purchasers are contemplated.
 
 
 12
 The one has already performed every condition of the sale, and is about to pay the consideration money; the other pays the consideration money in the first instance, and is, afterwards, to perform the conditions. They are both described in the same sentence, and, from each, an actual settlement is required as indispensable to the completion of the title. In describing this actual settlement, it is declared that it shall be made in the case of a warrant previously granted, within two years next after the date of such warrant, 'by clearing, fencing, and cultivating at least two acres for every hundred acres contained in one survey, erecting thereon a messuage for the habitation of man, and residing or causing a family to reside thereon for the space of five years next following his first settling of the same, if he or she shall so long live.'
 
 
 13
 The manifest impossibility of completing a residence of five years within the space of two years, would lead to an opinion, that the part of the description relative to residence, applied to those only who had performed the condition before the payment of the purchase money, and not to those who were to perform it afterwards. But there are subsequent parts of the act, which will not admit of this construction, and, consequently, residence is a condition required from the person who settles under a warrant, as well as from one who entitles himself to a warrant by his settlement.
 
 
 14
 The law, requiring two repugnant and incompatible things, is incapable of receiving a literal construction, and must sustain some change of language to be rendered intelligible. This change, however, ought to be as small as possible, and with a view to the sense of the legislature, as manifested by themselves. The reading, suggested by the counsel for the plaintiff, appears to be most reasonable, and to comport best with the general language of the section, and with the nature of the subject. It is by changing the participle into the future tense of the verb, and instead of 'and residing or causing a family to reside thereon,' reading, and shall reside, &c. The effect of this correction of language, will be to destroy the repugnancy which exists in the act as it stands, and to reconcile this part of the sentence to that which immediately follows, and which absolutely demonstrates that, in the view of the legislature, the settlement and the residence consequent thereon, were distinct parts of the condition; the settlement to be made within the space of two years from the date of the warrant, and the residence in five years from the commencement of the settlement.
 
 
 15
 This construction is the more necessary, because the very words 'such actual settlement and residence,' which prove that residence is required from the warrantee, prove, also, that settlement and residence are, in contemplation of the law, distinct operations. In the nature of things, and from the usual import of words, they are, also, distinct. To make a settlement, no more requires a residence of five, than a residence of five hundred, years: and, of consequence, it is much more reasonable to understand the logislature as requiring the residence for that term, in addition to a settlement, than as declaring it to be a component part of a settlement.
 
 
 16
 The meaning of the terms, settlement and residence, being understood, the Court will proceed to consider the proviso.
 
 
 17
 That part of the act treats of an actual settler, under which term is intended as well the person who makes his settlement the foundation of his claim to a warrant, as a warrantee, who had made an actual settlement in performance of the conditions annexed to his purchase, and if 'any grantee in any such original or succeeding warrant,' who must be considered as contradistinguished from one who had made an actual settlement. Persons thus distinctly circumstanced, are brought together in the same sentence, and terms are used appropriated to the situation of each, but not applicable to both. Thus, the idea of 'an actual settler,' 'prevented from making an actual settlement,' and, after 'being driven therefrom,' 'persisting in his endeavours' to make it, would be absurd. To apply to each class of purchasers, all parts of the proviso, would involve a contradiction in terms. Under such circumstances, the plain and natural mode of construing the act, is to apply the provisions, distributively, to the description of persons to whom they are adapted, reddendo singula singulis. The proviso, then, would read, thus, 'Provided always, nevertheless, that if any such actual settler, shall be driven from his settlement, by force of arms of the enemies of the United States; or any grantee, in any such original or succeeding warrant, shall by force of arms of the enemies of the United Stutes, be prevented from making such actual settlement, and shall persist in his endeavours, to make such actual settlement as aforesaid, then, in either case, he and his heirs shall be entitled to have and to hold the said lands, in the same manner as if the actual settlement had been made and continued.' The two cases are the actual settler, who has been driven from his settlement, and the warrantee, who has been prevented from making a settlement, but has persisted in his endeavours to make one.
 
 
 18
 It is perfectly clear, that in each case, the proviso substitutes something for the settlement to be made within two years, from the date of the warrant, and for the residence to continue five years, from the commencement of the settlement, both of which were required in the enacting clause. What is that something?
 
 
 19
 The proviso answers, that in case of 'an actual settler,' it is his being 'driven from his settlement, by force of arms of the enemies of the United States,' and in case of his being a grantee of a warrant, not having settled, it is 'persisting in his endeavours to make such actual settlement.' In neither case is residence, or persisting in his endeavours at residence, required. Yet the legislature had not forgotten, that by the enacting clause, residence was to be added to settlement; for in the same sentence they say, that the person who comes within the proviso, shall hold the land 'as if the actual settlement had been made and continued.'
 
 
 20
 It is contended on the part of the defendant, that as the time, during which persistance shall continue, is not prescribed, the person claiming the land, must persist until he shall have effected both his settlement and residence, as required by the enacting clause of the act: that is, that the proviso dispenses with the time, and only with the time, during which the condition is to be performed.
 
 
 21
 But the words are not only inapt for the expression of such an intent; they absolutely contradict it.
 
 
 22
 If the proviso be read so as to be intelligible, it requires nothing from the actual settler who has been driven from his settlement. He is not to persist in his endeavours at residence, or in other words, to continue his settlement, but is to hold the land. From the warrantee who has been prevented from making a settlement, no endeavours at residence are required. He is to 'persist in his endeavours,' not to make and to continue such actual settlement, but 'to make such actual settlement as aforesaid.' And if he does persist in those endeavours, he is to hold the land 'as if the actual settlement had been made and continued.' The construction of the defendant would make the legislature say, in substance, that if the warrantee shall persist in endeavouring to accomplish a particular object, until he does accomplish it, he should hold the land as if he had accomplished it. But, independent of the improbability that the intention to dispense only with the time, in which the condition was to be performed, would be expressed in the language which has been noticed, there are terms used, which seem to restrict the time, during which a persistance in endeavours is required. The warrantee is to persist in his endeavours 'to make such actual settlement as aforesaid:' now, 'such actual settlement as aforesaid' is an actual settlement within two years from the date of the warrant, and as it could only be made within two years, a persistance in endeavouring to make it, could only continue for that time.
 
 
 23
 If after being prevented from making an actual settlement, and persisting in endeavours, those endeavours should be successful within the two years; after which the person should be driven off, it is asked what would be his situation?
 
 
 24
 The answer is a plain one. By persisting, he has become an actual settler; and the part of the proviso which applies to actual steelers protects him.
 
 
 25
 If after the two years he should be driven off, he is still protected. The application of external violence dispenses with residence. The court feels itself bound to say so, because the prrviso contains a substitute, which, in such a state of things, shall be received instead of a performance of the conditions required by the en cting clause; and of that substitute residence forms no part.
 
 
 26
 In a great variety of forms and with great strength, it has been argued, that the settlement of the country was the great object of the act; and that the construction of the plaintiff would defeat that object.
 
 
 27
 That the exclusive object of an act to give lands to settlers, would be the settlement of the country, will be admitted; but that an act to sell lands to settlers, must have for its exclusive object the settlement of the country, cannot be so readily conceded. In attempting to procure settlements, the treasury was certainly not forgotten. How far the two objects might be consulted, or how far the one yielded to the other, is only to be inferred from the words in which the legislative intention has been expressed. How far the legislature may have supposed the peopling of the district in question to have been promoted by encouraging actual settlements, though a subsequent residence on them should be rendered impracticable by a foreign enemy, can only be shown by their own language. At any rate, if the legislature has used words dispensing with residence, it is not for the court to say they could not intend it, unless there were concomitant expressions, which should explain those words, in a manner different from their ordinary import. There are other considerations in favour of the construction to which the court is inclined.
 
 
 28
 This is a contract, and although a state is a party, it ought to be construed according to those well established principles which regulate contracts generally.
 
 
 29
 The state is in the situation of a person, who holds forth to the world the conditions, on which he is willing to sell his property.
 
 
 30
 If he should couch his propositions in such ambiguous terms that they might be understood differently: in consequence of which sales were to be made, and the purchase money paid, he would come with an ill grace into court to insist on a latent and obscure meaning, which should give him back his property, and permit him to retain the purchase money. All those principles of equity and of fair dealing, which constitute the basis of judicial proceedings, require that courts should lean against such a construction.
 
 
 31
 It being understood that the opinion of the court on the two first questions, has rendered a decision of the third unnecessary, no determination respecting it has been made.[2]
 
 
 32
 It is directed that the following opinion be certified to the circuit court.
 
 
 33
 1. That it is the opinion of this Court, that under the act of the legislature of Pennsylvania passed the third day of April, in the year of our Lord one thousand seven hundred and ninety-two, entitled 'An act for the sale of vacant lands within this commonwealth,' the grantee, by a warrant, of a tract of land lying north and west of the rivers Ohio and Alleghany and Conewango creek, who by force of arms of the enemies of the United States was prevented from settling and improving the said land, and from residing thereon from the tenth day of April one thousand seven hundred and ninety-three, the date of the said warrant, until the first day of January in the year one thousand seven hundred and ninety-six, but who during the said period persisted in his endeavours to make such settlement and residence, is excused from making such actual settlement as the enacting clause of the ninth section of the said law prescribes, to vest a title in the said grantee.
 
 
 34
 2. That it is the opinion of this court, that a warrant for a tract of land lying north and west of the rivers Ohio and Alleghany and Conewango creek, granted in the year one thousand seven hundred and ninety-three, under, and by virtue of the act of the legislature of Pennsylvania, entitled, 'An act for the sale of vacant lands within this commonwealth,' to a person who, by force of arms of the enemies of the United States, was prevented from settling and improving the said land, and from residing thereon, from the date of the said warrant until the first day of January in the year 1796; but who, during the said period, persisted in his endeavours to make such settlement and residence, vests in such grantee a fee simple in the said land; although after the said prevention ceased, he did not commence, and, within the space of two years thereafter clear, fence, and cultivate, at least two acres for every hundred acres contained in his survey for the said land, and erect thereon a messuage for the habitation of man, and reside, or cause a family to reside thereon, for the space of five years next following his first settling of the same, the said grantee being yet in full life.
 
 
 35
 Upon this opinion of the Supreme Court, the cause was again brought before a jury; the title was legally deduced from the state to the lessor of the plaintiff; and the facts of a prevention from making an improvement and settlement, under the 9th section of the act of April 1972, by a subsisting Indian war, as well as the facts of a persistance in the endeavour to make such improvement and settlement, were established, in detail, as they appear in the case of The Commonwealth v. Coxe, ante. p. 170. After argument, by Ingersoll, E. Tilghman, Lewis, and Dallas, for the plaintiff; and by M'Kean, W. Tilghman, and M. Levy, for the defendant, the following charge was delivered to the jury.
 
 
 36
 WASHINGTON, Justice.
 
 
 37
 The plaintiff appears before you with a regular paper title from the warrant to the patent.
 
 
 38
 When this cause was tried before, the counsel for the defendant insisted, that the plaintiff's title was built upon a contract, which he had not complied with, that he was to make a settlement, such as the enacting clause of the 9th section requires, unless prevented from doing so, by the enemies of the United States; in which latter case, he was not only to prove a persistance in endeavours to make the settlement, during the period of the war; but was to go on to make it, after the prevention ceased. This question was so difficult, as to divide, not only this Court, but the Courts of this state. The question was adjourned to the Supreme Court, who have decided, that a warrantee, who, from April 1793, to the 1st of January 1796, was prevented, by the enemies of the United States, from making such settlement as the law required, but who, during that period, persisted in his endeavours to make such settlement, is entitled to hold his land in fee simple, although, after the prevention ceased, he made no attempt to make such settlement. This we must consider as the law of the land, and govern our decision by it.
 
 
 39
 The questions then are,
 
 
 40
 1st. Was the Holland Company, from April 1793, to January 1796, prevented from making their settlement? and,
 
 
 41
 2d. Did they persist in endeavours, during that period, to make it?
 
 
 42
 What is the legal meaning of prevention, and persistance in endeavours? Were they prevented, and did they persist, within this meaning? The first are questions of law, which the Court are to decide; the latter are questions of fact, proper for your determination. What were they prevented from doing, in order to excuse them? The answer is, from clearing, fencing, and cultivating, two acres of land in every hundred acres contained in their warrant, from building a house thereon, fit for the habitation of man, and from residing, or causing a family to reside thereon. To what extent were their endeavours to go? The answer is, to effect these objects. It was not every slight or temporary danger, which was to excuse them from making such settlement, but such as a prudent man ought to regard. The plaintiffs stipulated to settle as a society of husbandmen, not as a band of soldiers. They were not bound to effect every thing which might be expected from military men, whose profession is to meet, to combat, and to overcome danger. To such men it would be a poor excuse, to say, they were prevented by danger, from the performance of their duty. The husbandman flourishes in the less glorious, but not less honourable, walks of life. So far from the legislature expecting, that they were to brave the dangers of a savage enemy, in order to effect their settlements, they are excused from making them, if such dangers exist. But they must persist in their endeavours to make them, that is, they are to persist if the danger is over, which prevented them from making them. For it would be a monstrous absurdity to say, that the danger, which, by preventing them from making the settlements, would excuse them, would not, at the same time, excuse them from endeavours to make them, so long as it existed. It would be a mockery to say, that I should be excused from putting my finger into the blaze of this candle, provided I would persevere in my endeavours to do it, because, by making the endeavours, I could do it, although the consequences would be such as I was excused from incurring. If, then, the company were prevented from making their settlements, by dangers from a public enemy, which no prudent man would or ought to encounter, and if they made those endeavours, which the same man would have made, to effect the object, they have fully complied with the proviso of the 9th section. How then are the facts? That a public war between the United States and the Indian tribes, subsisted from April 1793, and previous to that period, until late in 1795, is not denied; and, though the great theatre of the war lay far to the north west of the land in dispute, yet it is clearly proved, that this country, during this period, was exposed to repeated irruptions of the enemy, killing and plundering such of the whites as they met with, in situations where they could not defend themselves. What was the degree of danger produced by those hostile incursions, can only be estimated by the conduct of those, who attempted to face it. We find them sometimes working out in the day time in the neighbourhood of the forts, and returning within their walls, at night, for protection; sometimes giving up the pursuit in despair, and retiring to the settled parts of the country; then returning to this country, and again abandoning it. We sometimes meet with a few men hardy enough to attempt the cultivation of their lands, associating implements of husbandry, with the instruments of war, the character of the husbandman, with that of a soldier; and yet I do not recollect any instance, where, with this enterprising, daring spirit, a single individual was enabled to make such a settlement as the law required. You have heard what exertions were made by the Holland company, you will consider what was the state of that country during the period in question, you will apply the principles laid down by the Court to the evidence in the cause, and then say, whether the title is with the plaintiff or not.
 
 
 43
 Verdict for the plaintiff.
 
 
 
 [1]
 For a general view of this important controversy, see the cases reported ante, p: 170. The Commonwealth v. T. Coxe, 237. Attorney General v. The Grantees under the Act of April 1972, and ante, p. 363. Balfour's Lessee v. Mende.
 
 
 [2]
 Although no opinion was publicly delivered on the third question, it was understood, that the subject had been generally considered by the Court; and my information (which does not, however, proceed from the judges themselves) states the result to have been favourable to the grantee.