The opinion of the court was delivered by
Tilg-hmnan, C. J.
This is an ejectment, for a tract of land in Bradford county. Elizabeth Mattheioson, the plaintiff below, claimed under a warrant, dated the 10th of January, 1812, calling for an improvevent in 1785, and a patent, the 19th of February, 1813. The improvement was under a Connecticut title. The defendants made title under an application in the name of. John Stoner, dated the 3d of April, 1769, and a survey in 1773. Stoner conveyed on the 5th of April, 1775, to Matthias Slough, who conveyed on the 5th of April, 1780, to Joseph Wharton. On the 17th of April, 1781, a patent issued to Wharton, who, ou the 1st of April, 1812, conveyed to J. F. Satterlee, one of the defendants. Thus it appears, that the title of the defendants was the oldest and best, provided the land in dispute was covered by their survey. This was disputed, and was, of course, a fact to be decided by the jury. But several points of law arose on the trial, all of which, on the argument in this court, were reduced to one. It was contended, on the part of the plaintiff, that, even granting the title shown by the defendant to be the best, yet he was es-topped from contesting the plaintiff’s title, having conie into possession as his tenant. On the other hand, although the defendant conceded the general rule of law to be, that a tenant shall not controvert his landlord’s title, yet he denied its application to the present case; because the relation of landlord and tenant could not exist between persons holding under a Connecticut title. It is very clear, that one who entered on land in Pennsylvania, under a title derived from the state of Connecticut, acquired no right, in law or equity. What is called an improvement, or settlement right, arises from an implied contract, between the settler and the commonwealth, that the settler should have the right of pre-emption, in consideration of the benefit rendered to the public, by his improvement. But a settler under Connecticut, could not pretend to m *134 implied contract with the commonwealth, because he set up a title in direct opposition to the commonwealth. He rendered no benefit to Pennsylvania; but did her a great injury, by acting in defiance of her laws. It would be waste of time, to enter now, into the nature of the Connecticut title. It is matter of history, well known to the public, and may be found, in the cases of Enslin v. Bowman, 6 Binn. 467, and Daley v. Avery, 4 Serg. & Rawle, 281. In the last of these cases, it is said by the court, that one claiming by a settlement under Connecticut, could acquire no title under Pennsylvania, because the very act of making the settlement was a violation of the laws of Pennsylvania. In the case of Irish, &c. v. Scovel, 6 Binn. 57, the expression of the court is, that it was the object of the act of the 6th of April, 1802, to cut up by the roots the title of Connecticut, except in the seventeen townships. In Enslin v. Bowman, it is said, that from the time of the decree of Trenton, (December, 1782,) by which the right of the state of Pennsylvania was established, to the tract of country within her boundaries, which was claimed by the state of Connecticut, the courts of Pennsylvania must consider the title of Connecticut as of no validity, either in law or equity, except as it may have been confirmed by our acts of assembly. From these principles it follows, that landlords claiming under Connecticut, had no right to expect from the courts of Pennsylvania the extension of a privilege, by virtue of which, their tenants, who had purchased under a Pennsylvania title, should be estopped from defending themselves by that title. Rut, in answer to this, it is remarked, that the plaintiff had shown title under Pennsylvania; and it is asked, whether those who once claimed under Connecticut, were to be considered as outlaws, incapable of purchasing from the state. God forbid! They were not be so considered. When Elizabeth Matthewson took out a warrant, which was afterwards confirmed by a patent, her title under Pennsylvania was good, unless the land was subject to some prior appropriation. But her title commenced at the dale of her warrant, and could not be carried back by relation, to the commencement of the Connecticut improvement, in 1785, under which she claimed. Consider, then, the state of the parties on the 10th of January, 1812, when E. Matthewson took out her warrant. Elisha Satterlee was then In possession, and there is no evidence of his afterwards consenting to hold as the tenant of Mrs. Matthewson, or being privy, or consenting to, her purchase from the commonwealth. On the contrary, very soon after the taking out of her warrant, John E. Satterlee, her son, purchased the Pennsylvania title from Wharton. So that it does not appear, that the relation of landlord and tenant existed between the plaintiff and either of the defendants, after the time of the plaintiff’s acquiring a title under Pennsyvania.
I am of opinion, therefore, that the defendants were at liberty to defend themselves under the title of Wharton, which was better *135 than that of the plaintiff. It follows, that there was error in the the charge of the president of the Court of Common Pleas, for which the judgment must be reversed, and a venire de novo awarded.
Restitution is also awarded, both of the land and money which have been taken from the defendants.
Judgment reversed, and a venire facias de novo awarded.