The three following opinions of Mr JUSTICE HUSTON, in which he dis-sents from those of the court, having been omitted in their appropriate places, are now introduced, with references to the pages of this volume, where the respective cases may be found.

## Ross *against* Barker.

(See page 391, *ante.*)

HUSTON, J.—Dissenting.—This cause was held under advise-ment, and a majority of the court have agreed to affirm the opinion of the judge below. As, on mature reflection, I cannot concur in so doing, I shall proceed to state some of my reasons. I pass over what was intended as an eloquent preamble, nor shall I notice the respectful manner in which the present supreme court are treated. I also think it immaterial what was, or would have been, the construction of the act of 1792, taken alone; for I am one of those who believe that if a vacating warrant was necessary for a settler before he went on, (which it was not) if, under the act of 1792, the state alone could enter, (and it was impossible for the state as such to enter) yet it was in the power of the legislature to change this, and to give the right of entry to any one of its citizens; and that it has done so in the most unequivocal manner, has been attempted to be shown in Campbell *v.* Galbraith, and that opinion sanctioned and confirmed in Riddle *v.* Albert, 1 *Watts* 121; Rush *v.* Barr, 1 *Watts* 110; Reed *v.* Dickey, 2 *Watts* 459, and M'Call *v.* Barnheart, 2 *Watts* 112. And if the cases of Morris *v.* Neighman, Shippen *v.* Arghenbough, &c., had arisen after the passing of the acts of 1794, 1802 and 1804, I have no doubt the decision would have been different. In Jones *v.* Anderson, 4 *Yeates* 569, it is said, if the application had been filed, or the warrant on it taken out before suit brought, it might be given in evidence, and may, if defendant is turned out, and brings a new ejectment. Did the court mean to say it might be given in evidence and be of no avail when received? I would here observe, that we have twenty such acts of assembly, and there are such in every state in the Union, and except Dash *v.* Vankluk and this one, one other in this part of the country; such acts have never been objected to, and in this court, in Mervin *v.* Watson, and in the supreme court of the United States, that law, which was a very strong one, was held unobjectionable. I would observe also, that at common law, as well as by our acts of as-sembly, if any one enter for another without previous authority, the owner may validate the entry after it is made, and it shall be good for his use. 1 *Saunders* 319, *c* and *d* in note. Now if there is any

meaning in language, our legislature has confirmed those entries by settlers. The words of the act are, no estate shall vest unless, &c., but if it were an estate on condition, and grantee never entered, if grantor is never out of possession an entry is not necessary. The estate shall revest in him immediately on the breach of the condition. Bank of Kennebeck *v.* Drummond, 5 *Mass.* 321. For the true construction of the several acts of assembly relating to lands north of Ohio and west of Alleghany, I refer to the cases first cited.

Wherever a man settles in this state, east of the tract last mentioned, on land belonging to another, he is a trespasser; and if the owner brings suit within twenty-one years, he will recover the land and all the improvements; but when the law requires the owner of a warrant to make a settlement within a prescribed time and in a prescribed manner, and he does not go near the land for more than twenty years, and another person enters on it as vacant, applies to the state for it, and pays for it and improves it and it is sold and sold again, I deny that he is, or can fairly be considered a trustee for the owner of the warrant. If a warrantor gets the land he gets it from the possessor as a trespasser, and not as a trustee for him. The form of action, trespass for mesne profits shows this. To bring it with trust or equity is trust and equity run mad. But in the present case, this was laid down as law after twenty years adverse possession. Make the settler on land a trustee for him who had a right when the settler entered, and there is an end of the limitation of actions as to land. That act does not run between trustee and *cestui que trust.*

The charge of the judge has two pages about actual settlement, in which there is a strange mixture of what is law and is not law. That a man when he commences a settlement shall intend to make it a home, to live on it, is true; but it is not true that he shall intend to move his family to it next day or next week or next month. In Campbell *v.* Kyler, 6 *Serg. & Rawle* 257, the settler had been working on the land much more than a year, his family residing a few miles distant, and yet he held the land. And the decisions have always been, that if a settler concluded his labour by moving on the land in a reasonable time, of which the jury are the judges, he is protected from the first stroke of his axe, if he, under whom the defendants claimed, began in November, built in February, and moved his family in March, there was no unwarrantable delay—there was nothing to leave to a jury; it was misstating the law to say, if he intended to move on thereafter he was not protected from the day he began. The delay during Indian war is not to be counted.

William Williams's application was accompanied by an affidavit of at least one disinterested witness, proving when he first entered on the land. This, I admit, may be disproved: but after thirty or even twenty-one years, it must be *prima facie* evidence, that is, it must be conclusive unless disproved. There was error in the charge

on this point. There was no contradiction of this proof, and nothing to leave to the jury.

The next matter I shall notice, is that part of the charge which relates to the operation of the statute of limitations. Throwing away all the previous acts of those under whom the defendants claim, there is positive, uncontradicted proof of actual, continued residence, claiming the exclusive right from March 1796 till October 1817, more than twenty-one years. The phrase, "colour of title," has got into use in this state and a neighbouring state or states. In New York, it seems, it means a deed; but it is no matter whether the deed was made by one who had a right or not, or whether the deed is a forgery or not, as I understand a late opinion of it, need not be shown to the court, or if shown, need not be proved by witnesses or acknowledged or recorded; of course it may have been forged by the person in possession the day before the trial; if there is, or it is proved there was a deed, good or bad, defendant is protected as to all within it.

I do not recollect the phrase "colour of title" in the English reports, though I have not read all the later ones.

It was first sanctioned as establishing a difference in Miller *v.* Shaw, 7 *Serg. & Rawle* 129.

In Pedrick *v.* Searle, 5 *Serg. & Rawle* 240, it was unknown to court or bar. In that case a person had lived more than twenty-one years on land for which there was a regular paper title. An ejectment was brought against him and he having no knowledge of the statute of limitations, suffered judgments to be taken against him by default— and went off. He afterwards brought suit against the owner of the paper title, as it was held that the statute of limitations was not only a protection while he was on the land, but gave him a right on which he recovered the whole tract—the three-fourths of it was still woodland; and he showed no title except his possession. In same book, 354, Dickinson College *v.* M'Coy, also reported in 4 *Serg. & Rawle* 402; M'Coy was permitted to show a void deed, not as colour of title, the phrase was not known, but to show the extent of his claim.

In Overholsen *v.* Christer, 7 *Serg. & Rawle* 177, defendant held all his uncultivated land as well as the cultivated. Miller *v.* Shaw, was argued at same term, but the opinion was not delivered until the ensuing year.

Then came Benlow *v.* Royer, in which same doctrine was held, with this addition, that if plaintiff had never returned his land for taxation or paid taxes for twenty-one years, the jury might presume he had abandoned it. The same thing was laid down in Goodyear *v.* Reed.

In Jones *v.* Porter, 3 *Penns. Rep.* the doctrine of colour of title was laid out of view, and it was stated that a person who was in possession twenty-one years claiming it as his own was protected.

In Rung *v.* Shoenberger, 2 *Watts* 23, Judge Rogers expressly rejects the doctrine of colour of title, and says it is not necessary to

protect a defendant—and in M'Call *v.* Neely, 3 *Watts* 69, a man who set down on land for which there was a warrant, survey and return, was protected in the possession of the whole tract, though he showed no title or colour of title; to be sure plaintiff had not looked after the land or paid taxes for twenty-one years. But neither had the plaintiff in this case, William Barker, paid taxes for forty years.

The question is of most serious importance. In 1785, when this act was passed, more than half the state was woodland, and after leaving Philadelphia a few miles, nearly or altogether the half of every tract was woodland. In all the middle and eastern counties, the woodland is the most valuable part of the farm. Was it ever expected or intended that this statute should not protect all ?

A man sells part of the land which he or his father has held twenty-one or forty years; the purchaser builds a house and barn or mill, on a part which less than twenty-one years ago was woods. Is this to be taken from him? A man has held land more than twenty-one years and dies, and his land divided—one gets the house and old fields—another some fields and some wood—and a third all wood; the last two pay off the other heirs and build houses and barns, and at twenty years after, the land is taken from the two latter. This will not always be the law of Pennsylvania; I believe it ought not to have been so decided at any time.

But it has always been the law of Pennsylvania, that a man who has sat down on vacant woodland gained a title. No one ever set down on what he was sure he would never get a title for. He may be mistaken— the land may not be vacant, but is unoccupied—and he has colour of title, he always believes he has a right to settle on it, and will by continuing his settlement become the owner.

 By all these cases, the jury ought to have been told, that after so great a lapse of time, either the statute protected the defendant, or they might presume the defendant had abandoned it. They were told very differently, and in this I think there was error.

There were several points of law submitted to the court, the first of which related to the suit being commenced and carried on in the name of William Barker, to whom or in whose name, the warrant was granted in 1792. Several witnesses who had known the people in that neighbourhood and had resided near, proved they had never seen or heard of such a man.

It was contended, first, that the defendant, having omitted *to* call for the warrant of attorney of the plaintiff's counsel at the proper time, could not now object—but I apprehend that is a total mistake of the law and its meaning; that is called for, to show the authority of the lawyer—it has no relation to the right of the plaintiff.

Next, it was said this point was settled in Campbell *v.* Galbraith. This is also, I believe, a mistake; it was there decided that those who carried the warrants to the deputy surveyor, superintended the surveys and paid the fees, had a right to use the name of the warrantee to bring suit. It has not yet been decided, that any man, or

every man, can use the name of William Barker to recover and get possession of and hold this land. It was publicly known who instituted and carried on this suit, and no evidence was given of his right to do so.

The New York reports are full of cases on this matter in various shapes. It is by their practice as necessary to file a warrant of attorney at the commencement of the suit as it is here, and I believe more usual to do it—yet long after the first term the matter is inquired into, and the name of a plaintiff struck out of a record on his affidavit, that he never authorized the use of his name, and that the attorney advised him to pay the costs. See 4 *Johns.* 140, 483; 6 *Johns.* 316; 7 *Johns.* 589; 10 *Johns.* 368.

Adams on Ejectment, says, if the name of a trustee is used, it is advisable to get his consent before suit brought. In 3 *Taunton,* 440. after verdict, Best, Sergeant, moved for a rule to show cause why a verdict should not be set aside, and costs paid by the attorney, because the names of the assignees of a bankrupt were used along with that of the bankrupt as lessor of the plaintiff. The rule was discharged on proof that the property being a cottage of only 3 pounds a year, the commissioners and assignees had agreed not to take a conveyance of it, but to leave it to the bankrupt. The court held, that this parol agreement would prevent their setting aside the virdict.

In 2 *Chitty's Rep.* 170, such a rule was made absolute, and the verdict was set aside, because those in whom the legal title was, had not been consulted, nor authorised the suit. These cases show, that it does not depend on omission to call for the warrant of attorney, but will be inquired into even after trial and verdict.

If a suit may be brought in the name of the warrantee after forty years, and a recovery without money, why not after sixty or one hundred years? It has occurred too often, that a tract of land is sold as unseated, though there is cleared land, and a house, and barn, and settlers on it. The commissioners' deed passes nothing. The purchaser has no more right than he had before the sale. If he can use the name of the warrantee, and recover all but what has been occupied twenty-one years, it opens a new field of speculation.

A plaintiff must recover on his own title. If he can use the name of one who was owner half a century ago, he changes the nature of the action; and the plaintiff, instead of deducing title, recovers, unless the defendant can deduce title from the first grantee.

The court, in answer to a point, states in terms, that the act of assembly of 1814, is contrary to the 17th section of article 9 of the constitution, as impairing contracts. The precise meaning of impairing contracts has not been given; and no little difficulty has occurred in deciding whether a law impairs contracts or not. What contract is impaired by this law, has not been stated. A statute of limitation is not such a law; an act changing the remedy is not such a law; nor one enlarging the stay of execution. A law, the consequence of which, is the destruction of a claim, valid before the law

passed, is not unconstitutional, unless it directly annuls a contract. In Satterlee *v.* Matthewson, 13 *Serg. & Rawle* 133, the supreme court decided, that where a person claimed land in Pennsylvania, under the Connecticut title, and leased it to a tenant, such tenant might purchase a title from one claiming under this state, and set it up against his landlord; and generally, that the obligations which exist between landlord and tenant, were of no force among Connecticut claimants; and under this decision, the right of Satterlee was good. The legislature declared, that in all suits brought, or to be brought, the law as relating to landlords and tenants should be of the same force and effect among those settlers as between other persons. This court, and the supreme court of the United States, held this law not unconstitutional, though the effect of it was to give the land to Matthewson.

This court had often decided, that if the certificate of the acknowledgment of a deed by a married woman was defective in certain particulars, no right passed: and in Mercer *v.* Watson, the purchaser lost his land. The legislature passed a law, declaring all such acknowledgments good and available to pass the right, and the purchaser brought an ejectment, and recovered his land again. But for that law, his right was gone for ever. Yet this court, and the supreme court of the United States, declared the law good.

A law, then, which changes the evidence, by which a title may be impugned, is not unconstitutional. As I do not know the ground on which the majority of this court supported this part of the opinion, I shall say no more. Every man who enters on land of another, is a trespasser; and if this is to excuse the owner from bringing suit for more than twenty-one years, the statute of limitations is repealed. If the defendant entered on lands to which the plaintiff had right, yet in twenty-one years the plaintiff's right was gone; and this act was not necessary in this case. But, if it was necessary, it is not so strong, nor half so strong, as either of the cases last cited. At most, it brought the law in that section of country, back to what it is every where else. That where a man makes title under a law, he shall prove that he complied with the law, or was willing to comply; which in this case might have availed him within twenty-one years.

I shall here conclude with saying, that from the beginning to the end, the whole case, is, in my opinion, erroneous, though I have mentioned but a few of the errors.