Lessee of LEWIS BOND *against* ROBERT FITZRANDOLPH.

It is not necessary that there should be a *caveat* filed or hearing before the Board of Property before an ejectment is brought for lands north and west of the Ohio, Allegheny and Conewango.

Actual settlers under the law of 3d April, 1792, must have a survey made as directed by the law before they can recover in ejectment.

EJECTMENT for one messuage and 400 acres of land on French creek.

This was a contest between two settlers, without warrants, to lands west of the river Allegheny, and on the east side of French creek.

In 1789, one Cornelius Vanhorne erected a cabin of heavy logs on the land. The lessor of the plaintiff in 1792, was an officer of the army, under General Wayne, and was stationed by him with a detachment of 28 men at Cassewago, to protect the inhabitants from the Indians. During the winter, he pulled down Vanhorne's cabin, and made rails of the logs. He erected a new cabin 50 or 60 perches from the former, with the assistance of two soldiers whom he hired for that purpose, and also cleared and fenced a field of ten acres, which had formerly been cultivated by the natives. In the spring of 1793, he planted one half of an acre of corn and one half of an acre of potatoes, and was recalled the same spring, having first placed one Licquers, who had intermarried with an Indian woman, in his cabin, and contracted with a trader to supply him with meat and flour.

After Bond was withdrawn, the defendant, in behalf of Vanhorne, forced Licquers from the possession of the tract, and in August 1793, cut and made hay thereon. He then fled, on hearing that no treaty had been concluded with the Indians. In the course of the following month he returned with his horses, broke up the field which had been

fenced by Bond, (the rails whereof had been burnt,) put the fence in order and sowed turnips. On the 8th of May, 1794, he obtained a survey by William Powers, a deputy surveyor, of 401 acres and 29 perches, in pursuance of his improvement, dated 1st March, 1791. He lived on the lands, extending his improvements, erected three other houses, cleared and fenced 20 acres more of ground, and had the whole in good cultivation. Neither Bond nor Licquers had been in that country since 1794. They obtained no survey, nor did it appear that they had attempted to procure one.

On opening the plaintiff's title, it was objected that he should have filed his *caveat* under the 11th section of the act of 3d April, 1792, (3 Dall. Laws, 213,) and have first tried his claim before the Board of Property.

To this it was answered, that the clause referred to has no relation to these lands. Under the 9th section of that act, no title is vested in lands lying north and west of the rivers Ohio and Allegheny, and Conewango creek, unless a family resides thereon five years after a settlement is made. But by the 11th section, a patent goes of course within six months after the determination of the *caveat*, unless the party enters his suit at law, and this patent is declared to be a full and perfect title. The clause therefore clearly must relate to other vacant lands than those lying north and west of those waters. Besides, it is more convenient and economical to try these suits in the proper county, and the trial by jury should be encouraged.

By the court. The two clauses of the act refer to different objects. Though the words of the 11th section are general, they have been held not to extend to lands claimed under rights or contracts previous to the passing of that law. The law does not require *in terminis*, that a *caveat* shall be filed to try a title to lands. There are no words restrictive of the jurisdiction of the ordinary courts of justice in the first instance; and we will not by construction, increase the powers of the Board of Property. The parol evidence therefore must be received; but what operation the bare improvement will have, where the plaintiff must recover on showing a title, is another question. After the testimony was closed, and the cause had been spoken to by the counsel, the court delivered the following charge in substance : This is a case of the first impression, under the act of 3d April, 1792. That law has introduced a new species of title, but whether it will effectuate the intentions of the legislature, time only can determine ; in the mean while it behoves us to move with caution, and to reflect fully before we form an

opinion. No warrant exists on either side ; both parties claim as actual settlers and improvers under the 8th and 9th sections of the act. The plaintiff, who must recover by his own strength, must bring himself clearly within the law. " On his conforming to the provisions of the act, " depends the validity of his right. An application to the deputy surveyor of the district, and payment of the legal fees, form a part of that conformity. The plaintiff has given no survey in evidence, nor can we collect from presumption, that he has attempted to make one. His pretensions therefore are not designated or defined. His house and part of his original inclosure are excluded by the defendant's survey. He cannot claim under agreed lines made by the predecessors of the defendant and others, while he sets up a title adverse to the former. How then shall his improvement be extended, or in what direction shall it go ? Confining ourselves to the case now before us, we are of opinion, that the plaintiff having shown no survey, nor even an attempt to make one, his claim is not recognized by the law, so as to entitle him to recover. If the deputy surveyor had refused to do him justice, he might have complained thereof to the surveyor general or the Board of property, and he would then have evinced an endeavor on his part to conform to the law. But no pretext of that kind exists in the present instance.

Verdict for the defendant.

Mr. Brackenridge, *pro quer.*
Messrs. Ross and Woods, *pro def.*