# Riddle *against* Albert.

Under the act of the 3d of April 1792, taken in connexion with the acts of 22d of April 1794, 22d of September 1794, 2d of April 1802, and 3d of April 1804, if an original warrantee has neglected to commence the settlement, improvement and residence mentioned in the first of these acts, for the space of two years from the date of his warrant, it is lawful for any one to enter and take possession of the land as a settler, for the condition broken on the part of the warrantee, without having first procured a vacating warrant.

Actual improvement and settlement are essential to the right of any one to have a vacating warrant.

Upon such improvement and actual settlement having been made, the actual settler may defend himself against the original warrantee, or recover in ejectment against him.

ERROR to the common pleas of *Butler* county.

This was an action of ejectment for a tract of land, in which *Adam Albert* was plaintiff, and *James Riddle* was defendant.

The plaintiff below claimed under a warrant, dated the 1st of March 1794, in the name of *Robert Elder*, which was said not to be the description of the land in dispute, but a survey was made by the deputy surveyor of the district, embracing the land in dispute, on the 28th of May 1795.　This survey was never entered in a book kept by the deputy surveyor, but was returned into the surveyor-general's office before the year 1804, though the time was not shown.

Q

Evidence was given also, on the part of the plaintiff below, on the trial, showing that all right or title which existed under this warrant and survey, to the land in dispute, was then vested in him.

The defendant below claimed the land under an improvement, commenced in the winter of 1798 or 1799, by *John Brown*, by his building a cabin upon it.   He, in the spring of 1799, relinquished it in favour of *Andrew Gillilard*, who moved upon the land at that time, with his family, making it the place of their abode and residence, and, at the same time, clearing, fencing, cultivating and raising grain thereon, and continuing to do so every year, until 1809, when he had about twenty acres cleared and fenced, upon which he had raised grain.   At this time he sold about one hundred acres of the land to *George Shannon;* and continued to occupy the residue of it by tenants, to whom he leased it from time to time, by their residing upon it, and cultivating and raising grain upon it every succeeding year, with the exception of one year (about which the testimony of the respective parties was somewhat conflicting and contradictory), until the bringing of this action, which was in 1823. *Shannon* sold this one hundred acres to the plaintiff below, who afterwards bought the warrant of 1794.

*Andrew Gillilard*, after having gotten a certificate from the deputy surveyor of the district in which the land lay that it was not appropriated under any warrant issued from the land office, obtained a warrant for it, on the 25th of March 1818 ; and on the 18th of May following, a patent for it was granted to him.   The defendant below, *James Riddle*, was the tenant of *Andrew Gillilard*, in the possession of the land at the time this action was commenced.

It was testified by some of the witnesses, and perhaps contradicted by none, that *Mary O'Hara*, who was living upon the land as a tenant under *Andrew Gillilard*, left it some time in the spring of 1818, and that the house remained unoccupied during the summer of that year ; but some of the witnesses on the part of the defendant below testified, that the land was cropped by *Riddle*, as the tenant of *Gillilard*, and that he raised a crop of buckwheat upon it ; while some of the witnesses on the part of the plaintiff below said, they had been on the land during that summer and fall following, passing through it occasionally, and occasionally passing by in sight of it, and could not recollect that they saw any grain, buckwheat or any other, raised on it that year—rather thought there was none. . This was the only year in which it was denied that the land was not occupied and grain raised upon it by either *Gillilard* or his tenants. There was also some evidence given on the part of the plaintiff below, that he had, in the course of this year, entered upon the land, thrown down the back wall in a cabin and erected a chimney in it, that stood upon the land, and that he, at the time of doing so, said that he came in under his claim under the warrant of 1794, that he intended to rent the land, and after fastening up the door left it again.

This statement contains, substantially, all the facts disclosed and

[Riddle v. Albert.]

evidence given upon the trial of the cause, which are in any way material to the final determination of the real matter in controversy between the parties.

The following errors were assigned.

1. That the court erred : in admitting in evidence the certificate of the land office.

2. In admitting in evidence the record of the judgment and subsequent proceedings in the case of *Pigon* v. *Adlum*, *Nichols et al.*

3. That the court erred : in charging the jury, that it is unnecessary for a warrantee to show that he made such settlement, improvement and residence as is required by the act of 1792, and within the specified time ; provided a person has settled without a vacating warrant, and made such settlement and improvement ; because such settlement and improvement enure to the warrantee ; and that a trespasser cannot take advantage of any forfeiture of the warrantee, under the act of 1792.

4. In charging the jury, that the act of the 14th of March 1816 is unconstitutional, and void.

5. In charging the jury, that the purchase of the one hundred acres will not bar the recovery of the remainder of the tract.

6. In charging the jury, that an actual settler cannot recover without a vacating warrant.

7. In charging the jury, with regard to what constitutes such an entry as defeats the operation of the act of limitation, and in relation to the entry of *Adam Albert.*

8. [Omitted, as not decided upon.]

*W. W. Fetterman*, for plaintiff in error, cited, *Skeen* v. *Pearce*, 7 *Serg. & Rawle* 303 ; *Hazard* v. *Lowry*, 1 *Binn.* 166 ; *Patterson* v. *Cochran*, 1 *Binn.* 231 ; *Wright* v. *M'Kechan*, 3 *Yeates* 280 ; *Dawson* v. *Digby*, 5 *Binn.* 204 ; *Wright* v. *Small*, 4 *Yeates* 562 ; *Young* v. *Beatty*, 1 *Serg. & Rawle* 74.

*Evans* and *Ayres*, for defendant in error, cited, 2 *Yeates* 450 ; *Young* v. *Beatty*, 1 *Serg. & Rawle* 74 ; *Bedford* v. *Shelby*, 4 *Serg. & Rawle* 401 ; 10 *Serg. & Rawle* 97.

*Wilkins*, in reply, for plaintiff in error.

The opinion of the Court was delivered by

KENNEDY, J.—Eight errors have been assigned in this case. The first and second, which are founded upon bills of exception taken to the opinion of the court below in regard to the admission of evidence, were very properly abandoned by the counsel for the plaintiff in error. The remaining six are to the charge of the court which was delivered to the jury.

It is sufficient to say that there is no error in that part of the charge which is made the ground of the fifth error.

As to the fourth, seventh and eighth, it does not appear to me

that they are necessarily involved in the cause, and certainly not necessary to be decided on, in order to make a final end of the dispute in this cause; and unless it were necessary for this purpose, the press of business upon this court will not admit of bestowing that consideration upon the questions growing out of them, that might be requisite to solve them correctly. I shall, therefore, pass them by without intimating any opinion in respect to them.

The land in dispute is a part of the land lying north and west of the rivers Ohio and Alleghany, and Conewango creek, for the granting of which the act of the 3d of April 1792 was passed by the legislature of this state.

The third and sixth errors turn upon the same principle, and will be disposed of together. In them the plaintiff in error complains that the court below erred in charging the jury, among other things, that a warrantee under the act of the 3d of April 1792, without showing that he had ever made or caused to be made a settlement, improvement and residence upon the land, or ever having attempted it within the time allowed by law to him for that purpose, had a right to recover the possession of the land from an actual settler, where he settled upon and took his possession of the land without obtaining a vacating warrant; that the commonwealth alone could raise this objection, and take advantage of the condition broken, by not making the settlement within due time, which was to be done by granting a vacating warrant; that the settler, not having obtained a vacating warrant from the commonwealth, was to be considered a mere trespasser, and his settlement, improvement and residence as enuring to the use and benefit of the warrantee; and that such settler, being a trespasser, can not take advantage of his wrong, nor can a settler recover or defend as against the warrantee, without producing a vacating warrant.

The same question which is here presented by this part of the charge of the court to the jury, has been determined and settled during this term in *Campbell* v. *Galbreath,* which was brought here by writ of error to the judges of the court of common pleas of Mercer county. This court has there decided that under the act of the 3d of April 1792, taken in connection with the acts of the 22d of April 1794, 22d of September of the same year, 2d of April 1802, and 3d of April 1804, if the original warrantee has neglected to commence or cause to be commenced, the settlement, improvement and residence mentioned in the first of these acts for the space of two years from the date of his warrant, unless in case of his death, when the settlement or further prosecution of it seems to be dispensed with by the terms of this act, or has been prevented by force of arms of the enemies of the United States, but shall have failed within two years next after the cause of such prevention ceased to exist to commence or resume his settlement, improvement and residence upon the land, according to the requisitions of the same act, that it is perfectly lawful for any person to enter upon and take possession of the land as a settler, for the condition broken on the part of the warrantee in not

[Riddle v. Albert.]

having commenced and persisted in his settlement until it was completed. And so far from a vacating warrant being necessary in order to justify any one in taking possession of the land for the purpose of settling upon and improving it according to the directions of the act of 1792, where the original warrantee has failed to do it or to have it done within the time required, that the person wishing to take advantage of the forfeiture, must first enter upon the land and make the settlement, before he can apply and obtain a vacating warrant. The acts of assembly referred to have expressly forbidden the issuing of a vacating warrant to any one, unless he has previously made an improvement and become an actual settler upon the land; and therefore, by irresistible inference, have made the entry of any one for such purpose altogether lawful, and put it in his power to take advantage of the condition broken; so that instead of the commonwealth being the first to act and move in the matter, as has been said and even decided heretofore, it belongs to the citizens individually to do so, by entering upon and settling the land. It also follows of course, that if the entry of such settler previously, be not only lawful, but indispensably necessary, in order to obtain a vacating warrant, that all claim and title to the land by the original warrantee must cease, and be entirely defeated immediately upon the settler's taking possession of the land and making his settlement. The settler thereby acquires a pre-emption right to the land, which will enable him not only to defend his possession of it against the original warrantee or any other, but to recover it by action if expelled by him. It is unnecessary to go into a minute investigation of this matter, and to refer to the various clauses and provisions contained in the several acts of assembly referred to on this subject, in order to sustain the propositions which I have advanced, for that is done pretty much at large, in *Campbell* v. *Galbreath,* which will appear in print at the same time with this case.

The original warrant, which was granted to *Andrew Gillilard* in March 1818, though not in the form of a vacating warrant, may be considered sufficient, under the circumstances of this case, to supply the place of one. *Gillilard* had done all that was required towards settling, improving and residing on the land, nay, much more than is required either by the act of the 3d of April 1792, or by all the acts together. He paid the purchase with interest, from the date of his first settlement on the land, to the state. In short, he has done every thing towards paying the purchase money with interest, and performing all other terms and conditions required by law, to entitle him to a vacating warrant and patent for the land. Even the fees have been paid by him. Beside it is not his fault, if there be any in it, that he did not obtain a vacating warrant instead of an original warrant. He did all that was required by the act of the 3d of April, to inform himself whether the land had been appropriated by a survey under an original warrant or not; but no survey was entered in the deputy surveyor's office, nor book kept for that purpose in it, as required by the act. He then obtained a certificate in

[Riddle v. Albert.]

due form, from the deputy surveyor of the proper district, that the land never had been appropriated by warrant or survey under a warrant, and, of course, this appearing to be the case, it was impossible for him to obtain at the land office any other form of warrant than the one he did.    It cannot be that *Gillilard* can be prejudiced by the neglect of the agent of the commonwealth, in not keeping a book and entering in it all the surveys made, when no possible injury has been done by it to the warrantee.    I am of opinion that *Gillilard's* title to the land is as perfect and absolute as if he had obtained his patent upon a vacating warrant and survey.

Before closing, it is due, however, to the learned judge of the court below, who delivered the charge to the jury, that although there was error in that part of it which has been noticed under the third and sixth errors, yet he is not properly the author of it ; that it was produced by his sense of judicial obligation, which bound him to regard the decision of this court given in the case of *Skeen* v. *Pearce*, 7 *Serg. & Rawle* 303, as the law of the state, contrary to what seems to have been his own opinion upon the question.    As it was the court of *dernier* resort that fell first into this, he left it very properly for the same to correct, which I now consider as done.

The judgment in this case is reversed and a *venire facias de novo* awarded.