## Wyncoop *against* Heath.

A pre-emption right to land cannot be acquired by the erection of a house and saw-mill upon it, for the purpose of cutting and converting the timber into lumber, and without the intention of clearing and cultivating the land and making it the means of supporting a family.

The direction given by the fifteenth section of the act of April 8, 1785, to deputy surveyors as to the manner of locating warrants and making surveys upon rivers, is only applicable to lands upon the large streams, such as have always been called rivers, and is not applicable to the stream formerly called "Toby's creek," and by a late act of assembly "Clarion river;" this section of the act, however, is but directory, and a disregard of it will not vitiate a survey, if afterwards returned and accepted.

ERROR to the common pleas of *Jefferson* county.

This was an action of ejectment brought by John Wyncoop, against Elijah Heath, to recover a certain quantity of land. The plaintiff claimed to recover the possession of the land in dispute under a pre-emption right, which he alleged he had thereto by virtue of a settlement made thereon. The defendant claimed by virtue of a warrant from the commonwealth founded upon a settlement made by one Carr prior to the granting of it. The warrant and survey made in pursuance thereof, for the defendant, included land on both sides of a stream, now frequently called "Clarion river," but anterior to 1825, or about that time, known by no other name than "Toby's creek." The court below (White, president) in their charge to the jury, after recapitulating the evidence and making some preliminary observations thereon, proceeded thus: "The first question, therefore, for the jury to decide is, whether John Wyncoop entered and continued the occupation of this land with the intention to draw the means of maintaining a family from the proceeds of the soil. If so he is to be considered as an actual settler; but if his object was merely to build a saw-mill, and cut the timber into lumber, and make gain from it in that way, he is not an actual settler, and can have no legal claim to the land in controversy.

"This you are to determine from the evidence. He built, but cleared no land. O'Harra was the first that cleared; he made a garden and potatoe patch, amounting together to two acres. It is proper to remark that he (O'Harra, who was a witness) states he was employed by Wyncoop to saw by the 1000. Wilson came on next, but the terms of his contract are not disclosed. Goble was the next, who came on the land under Wyncoop, but it appears that he went in under a contract to build boats, and does not appear to have had anything to do with the improvement of the land.

[Wyncoop v. Heath.]

This is the substance of the testimony on that point; and it is for you to say whether the plaintiff is to be considered as an actual settler or trespasser upon the property of the commonwealth." The court in a subsequent part of their charge, in speaking of the defendant's title, say, "We consider the directions in the act of assembly as applicable to the large rivers of this commonwealth, and as being directory to the deputy surveyors as relates to the creeks and smaller streams within the same; and as his settlement has been consummated by patent, the circumstance that the improvement and settlement of Carr, under which the defendant claims, embraced both sides of the creek, does not impair his title."

The counsel of the plaintiff excepted to the charge of the court below; and assigned the following errors: that the court below erred in charging the jury,

1. That the only actual settler, protected by law, was he who made the land a home capable of supporting a family.

2. In leaving to the jury to decide whether there was an actual settlement.

3. In deciding that the claim of an actual settler could be extended across the Clarion river, a navigable stream.

*Buffington,* for plaintiff in error, cited 5 *Watts* 337; 2 *Yeates* 130.

*Heath,* for defendant in error.

The opinion of the court was delivered by

KENNEDY, J.—The first error has reference to that part of the charge of the court in which they tell the jury that the first question for them to decide is, "whether John Wyncoop entered and continued the occupation of the land with the intention to draw the means of maintaining a family from the proceeds of the soil. If so he is to be considered an actual settler; but if his object was merely to build a saw-mill and cut the timber into lumber, and make gain from it in that way, he is not an actual settler, and can have no legal claim to the land in controversy." The act of assembly of December 30, 1786, declares "that by a settlement shall be understood an actual personal resident settlement, with a manifest intention of making it a place of abode, and the means of supporting a family, and continued from time to time, unless interrupted by the enemy, or by going into the military service of this country during the war." Here we see that the settler must reside in person, that is, either by himself or his tenants, on the land, with the intention of making it his place of abode; in other words, his home, and the means of supporting his family. And in order to meet the requisition of the act, such personal residence on the land as a home, and making it the means of supporting a family, must be continuous and without interruption; and in no case will this

X.—2 M

[*Wyncoop v. Heath.*]

be dispensed with, excepting where the party is prevented from doing so by the enemy or by going into the military service of the country. Seeing then, the residence upon the land must not only be permanent and continuous, but likewise that the use of it for the purpose of making it the means of supporting a family, must be so, it is therefore proper to inquire and see how this latter object or end is to be effected. The act limits the pre-emption right of the settler to 400 acres, a quantity then thought sufficient in all cases, and probably not too much in some, to furnish the requisite support for a family by using it for the purposes of husbandry. At that day no man ever thought of making a permanent settlement, and perhaps but seldom, if ever, at the present, on land not considered susceptible of tillage. This was the only use that would then, according to the custom of the country, have been made of such a quantity of land, so as to have procured from it a perpetual and adequate supply for the support and maintenance of a family. It is perfectly obvious that the timber of 400 acres, however good it might be, by being cut and sawed into lumber, would all be exhausted in the course of a few years at most; and the means of supporting a family thereby would immediately cease, and most likely be for ever terminated, instead of being "continued from time to time" according to the language of the act. The great object of the state in granting pre-emption rights was, to have her lands improved by tillage as well as settled, so that the value of them might be increased, and at all events not deteriorated. But it is manifest, if such right were to be extended to every person entering upon lands of the commonwealth and residing there with his family, for the mere purpose of cutting and converting the timber growing thereon into lumber, that her object, in many instances, would be entirely frustrated, and the lands rendered worthless and altogether unsaleable. We therefore think that the plaintiff has no sufficient ground to complain of the charge of the court below on this point.

As to the second error, there is clearly nothing in it; for the court, after having defined and explained to the jury what in law constituted a settlement, left it to them to determine from the evidence whether the plaintiff had done all that was requisite to complete it. This was submitting nothing to the jury but the mere question of fact, whether, what the court defined to be a settlement, had been made or not upon the land by the plaintiff.

The third error is alleged to be founded upon the 15th section of the act of April 8, 1785, which directs and enjoins the surveyor-general and his deputies to locate and survey the amount of land contained in each warrant, in one entire tract, "in such manner and form, as that such tract shall not contain, in front on *any river* more than one half of the length or depth of such tract, and to conform the lines of every survey in such manner as to form the figure or plot thereof, as nearly as circumstances will admit, to an

[Wyncoop v. Heath.]

oblong of three times the breadth thereof." The direction of the act, in this particular, has never been regarded, in practice, as extending to other than large streams of water, and such as have ever been uniformly called "rivers;" but the stream in question was looked on and called a creek uniformly, to wit, "Toby's creek," until 1825, or near about that time, when it had the name of "Clarion river" first given to it by some one, and, since that, has received this name in acts and legislation by the state. But if a surveyor, in making a survey should happen to disregard this direction of the act, the act in terms does not declare that the survey shall be void on that account, and may therefore be considered as only directory.

Judgment affirmed.