## Wilson *versus* Horner *et al.*

1. In ejectment for land north and west of the Ohio, Allegheny and Conewango, the plaintiffs, claiming under Davis, gave evidence of a settlement by him, continuous personal residence for at least five years, cultivation, &c., of two acres for every 100, erecting a habitable house, and an official copy of an accepted survey; also of actual or constructive possession for more than thirty years, but without evidence of payment of the purchase-money.  The defendant offered in evidence receipts from the Commonwealth in 1864, for the purchase-money and patent fees for a tract, "to be followed by the patent and proof that it is for the same land;" the court below rejected the evidence, holding that a vacating warrant was necessary.  *Held*, not to be error.

2. Individuals cannot take advantage of the breach of condition by a settler unless through the Commonwealth, granting new warrants in the form specified in the Act of April 3d 1792.

3. The 10th section of Act of 1792 contemplates that the party whose title is forfeited for non-payment of purchase-money, is himself the actual settler and may be in possession.

4. When the law prescribes the mode in which rights to land accruing to the state by default of the grantee shall issue, that mode and no other must be pursued.

5. The officers of the land office have power to grant lands, not absolutely, but under conditions prescribed by law, of which every one is bound to take notice.

6. The provisions of the Acts of 1792 and March 1st 1811, requiring deputy surveyors to enter surveys in "survey books," &c., are directory, and the neglect of the surveyor to enter, &c., will not deprive the settler of his title.

7. A survey was returned into the surveyor-general's office, and endorsed "accepted."  The presumption is that the deputy surveyor had done his duty.

8. The deputy returned that he had "surveyed, &c., in pursuance of an *improvement;*" if the party was in fact entitled by a *settlement*, the mistake of the deputy would not prejudice him.

9. The Commonwealth may enforce her right to the purchase-money of ungranted land after any time by ejectment, but *as to* other parties the presumption of the 6th section of the Act of April 27th 1865 is *juris et de jure.*

10. Writings admitted in evidence or rejected, when an exception is taken should appear in the bill of exceptions with a *prout.*

11. Skeers *v.* Pearce, 7 S. & R. 303, and Galbreath *v.* Campbell, 1 Watts 70, remarked on.

October 19th 1868.    Before Thompson, C. J., Read, Agnew and Sharswood, JJ.

Error to the Court of Common Pleas of *Crawford county:* Of October and November Term 1867, No. 61.

This was an action of ejectment for 10 acres of land in Vernon

township, at the suit of James Horner and Mary M. his wife and others, against F. F. A. Wilson. The writ was issued June 2d 1865. The plaintiffs were heirs of John Davis, who died in 1839, and who, they claimed, had settled on the land, &c., shortly prior to 1800. The plaintiffs gave evidence of Davis's settlement, improvement, &c.; that he went on the land in 1799; that he built a cabin, improved 8 or 10 acres, resided on it for more than five years, and had paid taxes for a number of years, the land having been assessed in his name first in 1808 and last in 1864, with other acts of actual or constructive possession for upwards of thirty years. They also gave in evidence a copy of a survey under Davis's settlement right, made December 14th 1827, and filed in the surveyor-general's office, as follows:—

"Surveyed the above tract of land for John Davis in pursuance of his improvement bearing date in April 1796, situate on the west of and adjoining French creek, in Mead township, Crawford county, containing sixty-seven acres and six perches, and allowance of six per cent. for roads, &c., and there appeared to be upwards of ten acres of land cleared, fenced and cultivated on said tract of land, December 24th 1827.

                     "JAMES HERRINGTON, D. S."
Endorsed "March 13th 1828. Accepted."

Also a deed of partition, dated July 14th 1843, between the heirs of John Davis.

The defendant gave evidence on the question of the settlement, &c., tending to contradict the plaintiff's evidence; amongst which evidence of the defendant was a certificate from the land-office that the only paper relating to the suit on file there, was the survey by Herrington, the deputy surveyor. He offered a receipt from the Commonwealth, dated May 6th 1864, for $26.70, purchase-money of 111 acres in Vernon township, Crawford county; also a receipt for patent fees, to be followed by the patent and proof that it is for the same land.

The evidence was objected to and rejected, the court being of opinion that a vacating warrant is necessary if the settlement required by the Act of 1792 had been completed. At the request of the defendant a bill of exceptions was sealed.

The defendant asked the court to charge:—

1. That in order to acquire a right to land by settlement under the Act of 1792, there must be a continuous personal residence thereon for at least five consecutive years; two acres of each 100 claimed must be cleared, fenced and cultivated, a house erected thereon fit for the residence of a family, and a survey made thereof by the deputy surveyor of the district, duly registered in his office, and kept therein by him and his successors.

2. That unless the survey of 1827 was registered in the office

[Wilson v. Horner.]

of the deputy surveyor of the district in which it purports to have been made, it is not such a survey as is required under the Acts of 1792 and 1811, to enable the settler without a warrant to sustain an action of ejectment.

3. That the survey, purporting on its face to be on the *improvement* of John Davis, and not a settlement, was not one which a deputy was authorized to make, and cannot have the effect of an official survey which is necessary to accompany a settlement right to enable the settler to recover the possession of the land.

4. That the Act of 1792 limited the time of the settler to ten years; during which he should pay the purchase-money to the state and take out a warrant for the land claimed by him; that the time was extended by sundry Acts of Assembly to the 1st day of August 1863. And after the said 1st day of August 1863, the time for taking out a warrant and paying the purchase-money had fully expired, and that as neither John Davis or those claiming under him have paid the purchase-money or taken out a warrant, the Commonwealth could, after the 1st day of August 1863, forfeit the right acquired by the settlement, and grant the land by warrant to any other applicant by the payment of the purchase-money.

The court (Vincent, J.) answered these points, and charged as follows:—

" 1. This point is nearly correct, except as to so much of it as refers to the survey of the land claimed under the settlement. We are of the opinion that the certified copy of the survey made by Herrington, the deputy surveyor, under date of December 24th 1827, was a sufficient survey to give Davis a right to a patent from the Commonwealth, especially as the survey was accepted at the surveyor-general's office. The settler had done all he could do in procuring the survey. He could not enter it in the surveyor's book, even if it was necessary. Herrington sent a copy of the survey to the land office; whether it was entered in his book or not does not appear; for the plaintiffs, for some unexplained reason, do not offer that proof nor account for its absence. They rely on the survey returned to the land office, and although we think the office record ought to have been produced, if it could be, we are of the opinion that the survey made, procured, returned and accepted, was a sufficient compliance on the part of Davis to give him a right to a patent from the Commonwealth on payment of the purchase-money.

[" It is for you to say whether or not Davis complied with the other requisitions of the Act of 1792, that is, continuous possession by himself, or others by his procurement, for the period of five years, the clearing and cultivating of two acres of land for each 100 acres, and the building of a house fit for the habitation

[Wilson *v.* Horner.]

of man.] You are here referred to the evidence offered by the plaintiffs on these points, and although the events narrated by the witnesses go back to their very early childhood, you must not forget that early impressions are often so indelibly impressed on the memory, that they are never effaced until memory is destroyed entirely. [You will consider all the evidence on this subject and decide for yourselves. The settlement right would not be complete without this continuous possession for five years.]

"2. This point we answer in the negative, for the reasons given in answer to the 1st point.

"3. There being no right to a warrant on an improvement without settlement on the land, we think that you may and ought to consider the application of Davis to be for the only purpose for which he had the right to make it, and it seems to have been so considered and understood by the surveyor-general, as it is endorsed 'accepted'—and we think the survey sufficient, as stated in answer to the 1st point.

"4. The failure of John Davis and those who claim under him to pay the purchase-money, gave the Commonwealth the right to forfeit all the rights of Davis, acquired by his settlement, granting that he had made one; but we charge you that until the Commonwealth does so, either by a vacating warrant or by some process in the name of the Commonwealth, the rights of John Davis or those claiming under him, are superior to those of all other persons, and if you believe the settlement claimed to have been made by Davis was perfected by him, the plaintiffs in this case are entitled to recover, notwithstanding the failure to pay the purchase-money. The question of fact, as to whether or not the settlement, as claimed, was made and perfected, is for you. The plaintiffs must recover on the strength of their own title. But their title is good against all the world but the Commonwealth, if the settlement was completed.

"Under the evidence before you, the defendant has no title to the land, but he can hold it against strangers to the title, which these plaintiffs are, unless Davis complied with the provisions of the Act of 1792, as to residence, improvement and cultivation.

"There is no evidence of the payment of taxes by Davis on the land prior to 1806. If he lived on the land, improved and cultivated it as before stated, it was sufficient. Payment of taxes was not required to give him title, and a failure to pay them does not affect the rights of the plaintiffs in this suit, unless you believe such failure to be evidence of non-residence, and absence of claim of right to the land by Davis.

["There is no evidence of title out of the Commonwealth in anybody—that is, no actual written evidence, but if you believe from the evidence that Davis, and those claiming under him, had a continuous possession, either actual or constructive, of the land for thirty

years or more before the bringing of this suit in 1865, the legal presumption is, that the plaintiffs have the title of the Commonwealth, and therefore a perfect title against all the world, and a right to recover in this suit.]

"Payment of taxes under a claim of ownership of the property is constructive possession."

The verdict was for the plaintiffs. The defendant took a writ of error. The errors assigned were as follows:—

1. The rejection of the evidence offered by him.

2 and 3. The answers to his 1st and 2d points.

4 and 5. The first two parts of the charge enclosed in brackets.

6 and 7. The answers to his 3d and 4th points.

8. The part of the charge last enclosed in brackets.

*R. Brown* and *G. Church* (with whom was *G. W. Hecker*), for the plaintiff in error.—The defendant had a right to show that the legal title had been granted to him: Riddle *v.* Albert, 14 S. & R. 341; Acts of April 3d 1792, §§ 9, 10, 3 Sm. L. 73, Purd. 632, 637, pl. 86, 111; April 3d 1804, 4 Sm. L. 199. The default was not in residence and improvement, but in not taking out a warrant and paying the purchase-money. The Commonwealth had a right to enter and she granted that right to the defendant: McCall *v.* Anchors, 2 Harris ·253; Gibson *v.* Robbins, 9 Watts 156. The 1st and 2d points should have been answered distinctly and affirmed: Smith *v.* Thompson, 2 S. & R. 49; Acts of 1792, §§ 5, 8; March 1st 1811, § 2, 5 Sm. L. 199, Purd. 631, 632, pl. 81, 84, 85. As to the 4th and 5th assignments: Residence as well as "continuous possession for five years" is necessary; residence and improvement are the requisites: Smith *v.* Beck, 1 Casey 106; Jacob *v.* Figard, Id. 45; Wright *v.* McGehan, 3 Yeates 281; Act of April 27th 1855, § 6, Pamph. L. 369, Purd. 634, pl. 10. The deputy surveyor's return shows only an *improvement* but no *actual settlement:* Lawrence *v.* Hunter, 9 Watts 74.

*D. Derrickson* (with whom were *H. L. Richmond* and *J. Douglass*), for defendants in error.—Continued residence beyond five years is not necessary: Burchfield *v.* McCauley, 3 Watts 9. There was no abandonment: Whitcomb *v.* Hoyt, 6 Casey 409; Negley *v.* Breading, 8 Id. 325; Acts of 1792 and 1811, *supra.* After acceptance of a survey another cannot be made without the assent of the owner: Drinker *v.* Holliday, 2 Yeates 88; Cassidy *v.* Conway, 1 Casey 243. The survey is official: Lawrence *v.* Hunter, *supra.* A prior vacating warrant was necessary: Skeen *v.* Pearce, 7 S. & R. 303; Jones *v.* Anderson, 4 Yeates 569; Barnes *v.* Irvine, 5 Watts 497; Troutman *v.* May, 9 Casey 462; McCall *v.* Anchors, Act of 1855, *supra.*

The opinion of the court was delivered, January 4th 1869, by

SHARSWOOD, J.—This is an action of ejectment, brought by the defendants in error, who are the heirs at law of one John Davis, deceased, to recover a tract of land in Vernon township, Crawford county, and lying within the district north and west of the Ohio and Allegheny rivers and Conewango creek, to which the provisions of the Act of April 3d 1792, entitled "An act for the sale of vacant lands in this Commonwealth," (3 Sm. L. 70), are applicable.

Evidence was given on the trial which was submitted to the jury under instructions to which no exception was taken, that John Davis had made a settlement on the land followed by a continuous personal residence thereon for at least five years, and had cleared, fenced and cultivated two acres of each hundred claimed, and erected a house thereon fit for the habitation of man.    The plaintiff also produced an official copy of a survey returned to and accepted by the surveyor-general, although it did not appear affirmatively that the survey had been recorded on the books of the deputy surveyor of the district.

There was also evidence that Davis had been in actual or constructive possession, by acts of ownership and payment of taxes, for thirty years and upwards; that he died so seised, and that after his death the land was partitioned among his heirs.

The 1st assignment of error is, that the court below erred in rejecting the evidence offered by the defendants below, which was the receipts of the officers of the Commonwealth for the purchase-money and patent fees, to be followed by patent and proof that it is for the same land.   This was objected to specially because it was not offered to show a vacating warrant or the recital of one in the patent and for that reason, as stated by the learned judge below, was rejected.   We have on the bill of exceptions no copies, either of the receipts or of the patent.   All writings admitted or rejected to which an exception is taken should appear in the bill with a *prout*.   This is necessary to enable us to decide whether they were properly rejected.   We might, therefore, on this ground dismiss this assignment: The Mayor *v*. Riddle, 1 Casey 259; Stafford *v*. Stafford, 3 Id. 144; Snowden *v*. Warder, 3 Rawle 104.

Why this form of offer was resorted to instead of a simple and direct offer of the patent itself it is not easy to conjecture.   We will proceed, however, to examine the ground upon which the evidence was rejected.

The date of the receipts was in the year 1864, and the offer was based on the assumption that the original settler had forfeited all title by reason of the non-payment of the purchase-money, and the time allowed for this purpose having expired, the land was thenceforth open for general appropriation.   By the 10th section

[Wilson v. Horner.]

of the Act of April 3d 1792, it was provided that "if such actual settler, not being hindered as aforesaid by death or the enemies of the United States, shall neglect to apply for a warrant for the space of ten years after the time·of passing this act, it shall and may be lawful to and for this Commonwealth to grant the same lands, or any part thereof, to others by warrant, reciting such defaults." The period for the payment of purchase-money to the Commonwealth was extended from time to time by the legislature, until August 1st 1863, when it appears to have been allowed to expire.

The 9th section of the act contains similar provision for the issue of vacating warrants, in cases where the original warrantee had failed to comply with the conditions of settlement and residence. But these vacating warrants were to be issued to other actual settlers, and hence it was contended that by an entry for the purpose of settlement any one might acquire an incipient right, and that such entry was no trespass. It was a question which at one time much divided the bench and the profession. It had been decided in Lessee of Morris v. Neighman, 2 Yeates 453, that no individuals could take advantage of the breach of the condition unless through the instrumentality of the state by granting new warrants in the specified form, and this doctrine was again solemnly affirmed in Skeen v. Pearce, 7 S. & R. 303. Yet these decisions were overruled in Campbell v. Galbreath, 1 Watts 70, principally on the ground that the provisions of subsequent Acts of Assembly prohibiting any warrant to issue except to actual settlers had been overlooked or not brought to the attention of the court in the previous cases. But Campbell v. Galbreath was not long after, itself overruled in Barnes v. Irvine, 5 Watts 497, and the principle of Skeen v. Pearce re-established, and it has remained unquestioned ever since.

The difficulty which arose in these cases on the construction of the 9th section and subsequent acts, that warrants in any form could not be issued except to actual settlers, could never have arisen under the 10th section; for it contemplates clearly that the party whose title is forfeited by non-payment of the purchase-money is himself the actual settler and may be in possession. Hence the principle of Skeen v. Pearce must be considered as applicable to such forfeiture in its full vigor. That principle is expressed in this language in the opinion of the court delivered by Duncan, J., "When the law prescribes the mode and manner in which rights to land accruing to the state by reason of any default in the grantee shall issue, that mode and no other must be pursued. Here it is to be by a special warrant of a specific form; in no other, by the express words of the act, can a new grant be obtained; for the mode is not merely formal and directory, but substantial, imperative and restrictive."

9 P. F. SMITH—11

[Wilson *v.* Horner.]

" The new warrants," said Yeates, J., in Lessee of Morris *v.* Neighman, 2 Yeates 453, " operate as inquests of office to divest the former estate granted."

It is urged, however, that even although this may be so, the learned judge below erred in the rejection of the offer on the authority of Riddle *v.* Albert, 14 S. & R. 341, in which it was held that in an ejectment for land west of the Allegheny river, claimed by the plaintiff under a warrant and survey without settlement, the defendant has a right to show that the legal title has been granted to him by the Commonwealth without a vacating warrant. It is there put on the ground that it had always been the course of proceeding to admit the evidence, leaving the effect of it to be afterwards considered in passing upon the title.

This case was decided while the judicial and professional mind was wavering on the question of the necessity of vacating warrants. The evidence was rejected by Shaler, J., in the court below on the authority of Skeen *v.* Pearce, and when the case was afterwards again removed by writ of error to the Supreme Court, it was decided in conformity to the then recent case of Campbell *v.* Galbreath, that vacating warrants were not necessary to enable parties to take advantage of the breach of condition of actual settlement: Riddle *v.* Albert, 1 Watts 121. The decision in Albert *v.* Riddle was the subject of remark in the subsequent cases.

Mr. Justice Huston, in his concurring opinion in Campbell *v.* Galbreath, 1 Watts 104, considered it as overruling Skeen *v.* Pearce, for " surely," said he, " if the evidence could not avail the defendant, it ought not to have been received; it would not be error to reject it;" and he repeats the same thing in his dissenting opinion in Barnes *v.* Irvine, 5 Watts 559.

On the other hand, Gibson, C. J., denied this inference and maintained that the determination in Albert *v.* Riddle " was put expressly on the principle, which makes way for the deed of every grantor, who had a spark of title, and leaves its effect to the direction of the court." It seems very clear, however, that if in no possible event could the patent—with which the receipts of the Commonwealth in this case were offered to be followed—avail the defendant, it could not be error to reject them. If the principle of Skeen *v.* Pearce be admitted, there was no title whatever derived by it to the defendant, either as against the Commonwealth or any one else. It was not the case of a deed from a grantor having a spark of title, but it was a deed by one assuming to be an attorney but not having a spark of authority from the owner of the legal title.

The officers of the land office are public agents, intrusted with the power of granting lands in the name of the Commonwealth, not absolutely, but under the conditions prescribed by law, of

[Wilson v. Horner.]

which conditions every man is bound to take notice: Per Tilgh-
man, C. J., Bixler v. Baker, 4 Binn. 219. They had no more
power to grant such a patent as was proposed to be offered in this
case, than to grant an island, land vested in the Commonwealth
by escheat, or vacant lots within the city and liberties of Phila-
delphia. Indeed, the present would be just as monstrous a case
as either of them.

When an actual settler, by the labor of a lifetime, has im-
proved and cultivated a tract of land, and the limited time for the
payment of the purchase-money has, from ignorance or negli-
gence, been allowed to pass, it would shock the common sense,
not only of justice, but of state policy, to allow the first comer to
step in and gain a title by the payment of $26 for 111 acres of
improved land, without any notice to the settler and without no-
tice to the officers of the Commonwealth. We are of the opinion
that there was no error committed in the rejection of this offer of
evidence.

The 2d and 3d assignments of error may be considered to-
gether. They both involve the defendant's 2d point, "that
unless the survey of 1827 was registered in the office of the
deputy surveyor of the district in which it purports to have been
made, it is not such a survey as is required under the Act of 1792
or 1811, to enable the settler without a warrant to sustain an
action of ejectment." This point was answered by the court
below in the negative.

By the 5th section of the Act of April 3d 1792, 3 Sm. L. 72, it
is made the duty of the deputy surveyors, wherever they make
surveys under warrants directed to them, to enter the same in a
book to be kept by them, and to be called the "Survey Book."
By the 8th section it is provided "that the deputy surveyor of
the proper district shall, upon the application of any person who
has made an actual settlement and improvement on lands lying
north and west of the rivers Ohio and Allegheny and Conewango
creek, and upon such person paying the legal fees, survey and
mark out the lines of the tract of land to which such person may,
by conforming to the provisions of this act, become entitled by
virtue of such settlement and improvement; provided, that he
shall not survey more than 400 acres for such person, and shall,
in making such survey, conform himself to all the other regula-
tions by this act prescribed.

By the 2d section of the Act of March 1st 1811, Pamph. L.
55, it was further provided that all surveys made, or that may
hereafter be made, agreeably to the 8th section of the Act of the
3d of April 1792, and entered in the survey book of the proper
deputy surveyor agreeably to said act, it shall be the duty of the
deputy surveyors, on application to them made, to make return
of said surveys into the surveyor-general's office at any time

after the passing of this act, and the surveyor-general shall file the same in his office, after which the land so surveyed and returned need not be again surveyed, but the secretary of the land office shall issue warrants of acceptance for the same to the person or persons applying to take their titles agreeably to the provisions and directions of the 1st section of this act."

These are the parts of the Acts of 1792 and 1811, to which reference is made in the point. These provisions in regard to the keeping of a survey book and the entry of surveys therein, like many other directions given to the deputy surveyors where the law does not expressly declare that the surveys shall otherwise be void, are directory merely. The settler ought not to be deprived of his title or of his remedy to enforce it by the neglect of duty of the officer.

Thus, in a much stronger case, where the 15th section of the Act of April 8th 1785, 2 Sm. L. 323, expressly directed and enjoined the surveyor-general and his deputies to make surveys having river fronts in a particular form, it was held in Wyncoop *v.* Heath, 10 Watts 428, that as the act in terms did not declare that the survey should be void if otherwise made, it ought therefore to be considered as only directory. But in the case now before us it was not shown that the survey had not been entered in the survey book, and as an official copy of the survey, made by the deputy, filed in the surveyor-general's office and endorsed "accepted," was given in evidence, the presumption was that the officer had done his duty.

"Every presumption," says Yeates, J., "is in favor of a draft of survey duly certified by the proper officer. It is powerful evidence that a survey was fairly, regularly and legally made, unless it be rebutted by other proof:" Lessee of Meade *v.* Haymaker, 3 Yeates 71. A settler on lands east of the Allegheny can maintain ejectment without an official survey, because he cannot obtain such a survey without a warrant, nor a warrant without payment of the purchase-money, and to require that would be to prostrate the main pillar of the title by settlement— the acquisition of an equitable title on credit: Luck *v.* Duff, 6 S. & R. 189; Mickle *v.* Lucas, 10 Id. 293. But as to lands north and west of the Allegheny and Ohio rivers and Conewango creek, the settler, as we have seen, has a right, without a warrant and without any payment of the purchase-money, to call upon the deputy surveyor to make such a survey.

It has been held, therefore, that within these limits it is necessary in general that the settler should produce a survey, or as Yeates, J., expressed it in Lessee of Bond *v.* Fitzrandolph, 2 Yeates 227, "an endeavor on his part to conform to the law." "If," said the same eminent land lawyer in the subsequent case of Stockman *v.* Blair, 5 Binn. 211, "he uses every reasonable

[Wilson v. Horner.]

endeavor to procure a survey, but fails in the attempt, he might circumscribe his boundaries as claimed by some open act, which would be binding on him at a future day. He would thus do all that would be in his power."

In Buschfield v. McCauley, 3 Watts 9, after evidence had been given that a survey had been made on the ground, a copy of a torn draft, found in the office of the deputy surveyor, was held to be admissible in an ejectment by a settler, without any intimation that it was necessary to show that there had been a survey book kept in the office, and that the survey in question had been registered therein. The 2d and 3d assignments of error, therefore, are not sustained.

The 4th and 5th assignments substantially complain of the charge as describing the foundation of the right of the plaintiff below to rest on the continuous possession by Davis or others, by his procurement, for the period of five years. But we must look at the whole charge together, and not at an isolated passage. The jury had been previously instructed in answer to the defendant's 1st point, that "there must be a continuous and personal residence on the land for at least five consecutive years; two acres of each hundred claimed must be cleared, fenced and cultivated; a house erected thereon fit for the residence of a family." When the court afterwards explained the necessity of continuity of possession for at least five years, the jury could not possibly have understood by the word "possession," anything but the personal residence before stated.

The 6th error assigned is for not affirming the defendant's 3d point. That point in substance was, that the survey in evidence purported on its face to be on the improvement of John Davis, and not on a settlement, and therefore was not one which a deputy surveyor was authorized to make. But if in fact Davis was entitled by reason of a personal resident settlement, the mistake of the officer in calling it an improvement ought not to prejudice him. There is nothing therefore in this assignment.

The 7th assignment is, that the court erred in not charging, as requested in the defendant's 4th point, that as the time for taking out the warrant and paying the purchase-money had fully expired, the Commonwealth could forfeit the right acquired by the settlement, and grant the land to any other applicant. As, however, the court had rejected the offer of the defendant to prove the payment of the purchase-money by him, and the patent with which it was to be followed, there was really no evidence in the case on which to base this point, and the court might with propriety have declined to answer it. We have, however, already considered the question on the bill of exceptions to the rejection of the evidence, and the answer of the court conforms to this opinion.

[Wilson *v.* Horner.]

The 8th and last assignment of error is to the instruction given by the court to the jury that if they believed from the evidence "that Davis and those claiming under him have had a continuous possession, either actual or constructive, of this land for thirty years or more before bringing this suit in 1865, the legal presumption is that the plaintiffs have the right of the Commonwealth, and therefore a perfect title against all the world, and a right to recover in this case."

There was at one time a prevalent impression, founded on a Nisi Prius *dictum* of McKean, C. J., in 'Shrider's Lessee *v.* Nargan, 1 Dall. 68, that it was necessary in all cases for the plaintiff in ejectment to show the title to be out of the Commonwealth. Mr. Justice Sergeant has devoted a chapter in his "View of the Land Laws of Pennsylvania," ch. 33, p. 202, to an examination of this dictum, and shows that it is not sustained either by reason or authority. With the object of settling any doubt on the subject, and at the same time of providing a clear and well defined rule, the legislature has declared by the 6th section of the Act of Assembly of April 27th 1855, Pamph. L. 368, that thereafter, "in all cases where there has been a continuous possession of lands or tenements for thirty years, it shall be presumed, as between the parties litigant other than the Commonwealth, that the title thereof shall have been parted with by the Commonwealth."

It is not denied that there was evidence in the case that John Davis and his heirs had such continuous possession, and if so, the question was properly submitted to the jury. Nor did the testimony of a clerk in the land office that the only paper in that office which had relation to the suit, was the original survey for John Davis, a copy of which was in evidence, tend to rebut the presumption.

There are very many titles in Philadelphia, and other parts of the Commonwealth, clearly within the provisions of the act in regard to which the same testimony may be given. The Commonwealth may enforce her right to the purchase-money of ungranted land after any period of time by an ejectment, but as to other parties litigant the presumption raised by the Act of Assembly is one *juris et de jure.*

Judgment affirmed.